UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| ROSA NUNO, | ) | No. ED CV 10-00188-VBK |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| v. | ) | |
| | ) | (Social Security Case) |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits.  Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge.  The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner.  The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified Administrative Record ("AR").

Plaintiff raises the following issues:

1.   Whether the Administrative Law Judge ("ALJ") properly

considered the treating physician's opinion regarding the need for Plaintiff to avoid repetitive twisting;

2. Whether the ALJ properly considered the treating physician's opinion regarding Plaintiff's need for a ten-minute break every hour;

3. Whether the ALJ properly evaluated Plaintiff's residual functional capacity; and

4. Whether the ALJ posed a complete hypothetical question to the vocational expert.

(JS at 2-3.)

This Memorandum Opinion will constitute the Court's findings of fact and conclusions of law. After reviewing the matter, the Court concludes that the decision of the Commissioner must be affirmed.

**I**

**THE ALJ PROPERLY CONSIDERED THE OPINION OF DR. STEIGER**

In her first issue, Plaintiff asserts that the ALJ failed to properly consider the opinion of her "treating physician," Dr. Steiger. (JS at 3-12.)

Following an on-the-job injury which she suffered on April 2, 2004 (AR 162), Plaintiff was evaluated by Dr. Steiger on September 24, 2004 (AR 162-68), then referred out for an MRI, following which she was examined by Dr. Steiger for a second time on November 1, 2004. (AR 155-61.) Plaintiff was not again seen by Dr. Steiger. The primary purpose of Plaintiff's examinations by Dr. Steiger was in connection with her workers' compensation case. Dr. Steiger diagnosed musculoligamentous sprain, lumbar spine, with left lower extremity

radiculitis; a disc bulge at L5-S1 of 5-6 mm, and at L4-5 of 3 mm; and bilateral facet hypertrophy, at L4-5 and L5-S1. (AR 158.)  Based on his examinations, and the MRI findings, Dr. Steiger recommended restrictions from heavy lifting or repeated bending and stooping, and advised that Plaintiff should avoid repetitive twisting and prolonged sitting. (AR 159.)

On August 28, 2007, at the request of the Department of Social Services, Plaintiff received a complete orthopedic evaluation ("CE") from Dr. Sophon. (AR 180-84.)  Based on his evaluation, Dr. Sophon opined that Plaintiff is able to lift and carry 50 pounds occasionally, 25 pounds frequently, and that she is able to sit, stand and walk six hours out of an eight-hour day. (AR 184.)

At the hearing before the ALJ (AR 20-52), testimony was taken from Dr. Lorber, the Medical Expert ("ME").  Dr. Lorber reviewed all of the available medical evidence, and rendered his own opinion that Plaintiff is capable of lifting up to 20 pounds, frequently 10 pounds; that she may occasionally bend, stoop and crouch, but should not kneel or crawl; she cannot work at unprotected heights, or around dangerous moving machinery, and should not be exposed to concentrated vibration. She should not balance, climb ladders, scaffolds or ropes.  She may stand and/or walk for a period of at least four hours per day, but not more than one hour at a time.  She may sit for a total of at least six hours per day, but not more than one hour at a time.  She does not require any other exertional, environmental or manipulative restrictions. (AR 27-28.)

In his decision, the ALJ reviewed the reports and opinions of various physicians, including Drs. Steiger and Sophon, and the State Agency physicians, in addition to Plaintiff's treatment by a family

nurse practitioner. (AR 14-17.)  The ALJ essentially adopted the functional restrictions found by the ME in arriving at Plaintiff's residual functional capacity ("RFC"), at Step Four of the sequential evaluation process. (AR 17.)

Plaintiff finds fault in the ALJ's determination of her RFC because she contends that the ALJ failed to address Dr. Steiger's opinion that Plaintiff was incapable of repetitive twisting.  For the reasons set forth below, the Court disagrees.

First, a careful examination of the ALJ's RFC would indicate that he did not, in fact, fail to address or in fact reasonably incorporate Dr. Steiger's functional limitations.  As the Commissioner notes, pursuant to Social Security Ruling ("SSR") 96-8P, non-exertional limitations include "postural" aspects, which include such activities as twisting.  Thus, in precluding Plaintiff from more than occasional postural limitations such as bending, stooping and crouching (AR 12), the ALJ effectively incorporated Dr. Steiger's limitation against "repetitive" twisting types of postural movements. The absence of the word "twisting" in the discussion of postural limitations incorporated in the ALJ's RFC is of de minimis significance in view of its overall import.

The Court also questions Plaintiff's characterization of Dr. Steiger as her treating physician, despite the fact that Dr. Steiger may have so characterized himself in the heading of his two reports. A treating physician, however, is defined in the Social Security context as a doctor who has an "ongoing treatment relationship" with his or her patient. (See 20 C.F.R. §404.1502.)  As stated in the regulation, "Generally, we will consider that you have an ongoing treatment relationship with an acceptable medical source when the

medical evidence establishes that you see ... the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s)." The regulation also notes that a treating source is not one who provides an evaluation in support of a claim for disability.  It can certainly be viewed that Dr. Steiger's position as the evaluating physician for Plaintiff's workers' compensation claim would fall into that exception.  The Court would note, however, that it is not the infrequency or the temporal limitation of Dr. Steiger's relationship with Plaintiff (e.g., two examinations in 2004) which is determinative in and of itself, because even a physician who infrequently sees a patient may, under certain circumstances, be considered a treating source.  Rather, it is the fact that considering Plaintiff's extreme complaints of disability, it would be expected that she would have a more extensive relationship with a treating source than is reflected in simply two examinations by a physician for workers' compensation purposes at or around the time of her on-the-job injury.  Indeed, the record here reflects that after seeing Dr. Steiger in 2004, Plaintiff did not undergo any medical treatment whatsoever until approximately 2006, when she began seeing a nurse practitioner.

Lending further support to the conclusions of the ALJ with regard to Plaintiff's functional limitations is the fact that the ALJ determined Plaintiff's RFC for a reduced range of light work and occasional postural activities as even more conservative or restrictive than Dr. Steiger's opinion which only precluded Plaintiff from heavy lifting and repeated postural activities.

Even if Dr. Steiger is viewed as a treating physician, his opinion is not necessarily conclusive as to either Plaintiff's

physical condition or the ultimate issue of her disability.  Further,
the ALJ may reject the opinion of a treating or examining physician in
favor of the opinion of a non-treating, non-examining medical expert.
The rule is succinctly stated in Morgan v. Apfel, 169 F.3d 595, 602
(9th Cir. 1999):

> "The opinion of a nonexamining medical advisor cannot
> by itself constitute substantial evidence that justifies the
> rejection of the opinion of an examining or treating
> physician. (citations omitted)   In Gallant [Gallant v.
> Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984)], we determined
> that 'the report of [a] nontreating, nonexamining physician,
> combined with the ALJ's own observation of [the] claimant's
> demeanor at the hearing,' did not constitute substantial
> evidence and, therefore, did not support the Commissioner's
> rejection of the examining physician's opinion that the
> claimant was disabled.   Gallant, 753 F.2d at 1456.   In
> Pitzer [Pitzer v. Sullivan, 908 F.2d 502 (9th Cir. 1990)],
> we held that the nonexamining physician's opinion 'with
> nothing more' did not constitute substantial evidence.
>
> But we have consistently upheld the Commissioner's
> rejection of the opinion of a treating or examining
> physician, based *in part* on the testimony of the
> nontreating, nonexamining medical advisor. [citations
> omitted]   In Magallanes [Magallanes v. Bowen, 881 F.2d 747
> (9th Cir. 1989)], evidence that supported the ALJ's
> determination included, among other things, testimony from
> the claimant that conflicted with her treating physician's
> opinion." [citation omitted]

1   (169 F.3d at 602)

2      Also instructive is the Ninth Circuit's discussion of this issue

3   in Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995):

4        "Where the opinion of the claimant's treating physician

5      is contradicted, and the opinion of a nontreating source is

6      based on independent clinical findings that differ from

7      those of the treating physician, the opinion of the

8      nontreating source may itself be substantial evidence; it is

9      then solely the province of the ALJ to resolve the conflict.

10     Magallanes, 881 F.2d at 751.  Where, on the other hand, a

11     nontreating source's opinion contradicts that of the

12     treating physician but is not based on independent clinical

13     findings, or rests on clinical findings also considered by

14     the treating physician, the opinion of the treating

15     physician may be rejected only if the ALJ gives specific,

16     legitimate reasons for doing so that are based on

17     substantial evidence in the record. Id. at 751, 755.  See

18     Ramirez v. Shalala, 8 F.3d 1449, 1453 (9th Cir. 1993)

19     (applying test where ALJ relied on contradictory opinion of

20     nonexamining medical advisor)."

21   (53 F.3d at 1041.)

22

23      Based on all of the foregoing, the Court determines that the ALJ

24   did not err in his evaluation of Dr. Steiger's opinion.

25      Plaintiff asserts a related second issue concerning Dr. Steiger's

26   opinion.  She finds fault with the ALJ's failure to include Dr.

27   Steiger's limitation on Plaintiff's exertional capacity. Dr. Steiger

28   opined that Plaintiff would require, in a work setting, a ten-minute

break every hour. (AR 162-68.)  That specific limitation was not included in the ALJ's RFC.  Again, however, the Court does not find error in this portion of the ALJ's decision.

The principal point is that error cannot be found because Dr. Steiger did not incorporate a ten-minute break into any of his opinions; rather, the discussion in Dr. Steiger's first report of September 24, 2004 of this issue is under the "History of Injury" portion, in which Dr. Steiger indicates that Plaintiff had reported that she was to take ten-minute breaks every hour. (AR 163.)  Clearly this does not constitute Dr. Steiger's objective opinion, but, rather, a reflection of the medical history that he took from Plaintiff during his first examination of her.  After Dr. Steiger referred Plaintiff for an MRI, he then rendered a second opinion following re-examination, in November 2004.  In this report (AR 155-61), Dr. Steiger did not at all discuss any requirement that Plaintiff would need to take a break every hour.  Despite that, the ALJ, relying upon the ME's testimony at the hearing, found that every hour, Plaintiff would need to take breaks from sitting, standing or walking. (AR 12, 28.)

Based on the foregoing, the Court can find no error with regard to Plaintiff's second issue concerning rest breaks.

Plaintiff's third issue follows from the first two issues, in raising questions about the RFC as found by the ALJ.  But here, Plaintiff merely incorporates her first two issues, concerning asserted omissions in the ALJ's findings of Plaintiff's exertional capacities, but raises no new issue on a substantive level.  In addition, however, Plaintiff glosses over the fact that after Dr. Steiger's first examination in September 2004, he found that Plaintiff

had the ability to do only light work, while in his second report, following a re-examination two months later, he found that Plaintiff had the ability to do anything less than heavy work with repetitive postural movements.  If, in fact, both reports are postulated as constituting Dr. Steiger's opinion as to Plaintiff's functional limitations, then clearly, they would be inconsistent.  A more logical reading, which the Court has already adopted in its previous discussion, is that Dr. Steiger's second report more accurately reflects his objective opinion as to Plaintiff's functional limitations and abilities.  Further, as the Commissioner notes, the ALJ erred on Plaintiff's side in finding more restrictive limitations than even Dr. Steiger had found, by adopting the opinion of the ME.

Finally, Plaintiff's fourth issue concerns the asserted incompleteness of the hypothetical question posed to the Vocational Expert ("VE").  Again, this issue essentially incorporates the asserted errors set forth in the first two issues, in that the hypothetical questions, which are laboriously quoted in the JS, fail to include limitations on repetitive twisting or a requirement that Plaintiff take ten-minute breaks every hour.  The Court has already adjudicated these issues in its previous discussion, and nothing further need be stated to adequately address this formulation of asserted error.  Because the Court has not found that restrictions on repetitive twisting or a requirement for a ten-minute break every hour are an accurate reflection of Plaintiff's RFC, they need not have been included in a hypothetical question to a VE.  The law is that the hypothetical question need not incorporate limitations not found to be applicable.  See Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005).  Consequently, the Court can find no error in the asserted

incompleteness of the hypothetical posed by the ALJ to the VE at the hearing.

The decision of the ALJ will be affirmed.  The Complaint will be dismissed with prejudice.

**IT IS SO ORDERED.**


DATED: November 3, 2010                    /s/
                                 VICTOR B. KENTON
                                 UNITED STATES MAGISTRATE JUDGE